Hanna Q. Rhee MD
912 Hazel St
Gridley, CA 95948
714-321-1839
530-456-6633
hannarhee7@gmail.com

In Propria Persona



FILED
JAN 17 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

# THE UNITED STATES DISTRICT COURT
## EASTERN DIVISION OF CALIFORNIA

HANNA Q. RHEE,

    Plaintiff

vs.

MEDICAL BOARD OF CALIFORNIA, BIGGS-GRIDLEY MEMORIAL HOSPITAL dba "ORCHARD HOSPITAL", MEGAN O'CARROLL, MEDESTAR, ALEXANDRA M. ÁLVAREZ, MICHELLE A. BHOLAT MD, NATHAN E. LAVID MD, REINHARDT "RICHARD" GORDON HILZINGER MD, ROBERTO MOYA, STEVEN LEE STARK, JAMES C. BROWN JR DO, KIRSTEN STORNE-PIAZZA, HENRY B. STARKES JR MD, APRIL PLASENCIA BUTTACAVOLI, MAY USMAN, JOHN T. HARRIS, MARGARET ISLEY BROWN, EDWIN A. BECKER JR, CLARK S. REDFIELD, JOE CUNHA, CURT ENGEN, ART COTA, JATINDER S. KULLAR, and Does 1 through 20, Inclusive,

    Defendants.

Case No.: 2:18CV-00105 GEB - CMK

**COMPLAINT FOR DAMAGES**
Violation of Civil Rights (42 USC§1981, 1983 and §1985 and §300a-7(d); 1st, 4th, 5th, 8th and 14th Amendments)

DEMAND FOR JURY TRIAL

---

- 1 -
RHEE vs. MEDICAL BOARD OF CALIFORNIA, et al.

Plaintiff, HANNA Q. RHEE, complains of defendants and each of them as follows:

1

## JURISDICTION AND VENUE

1. Plaintiff brings this civil rights lawsuit pursuant to 42 USC §1981, §1983 and §1985 and §300a-7(d) to redress the deprivation by Defendants, under color of state law, of rights secured to the Plaintiff under the United States Constitution, including the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, of the United States Constitution and under federal law.

2. Jurisdiction is conferred on this Court by 28 USC §1343(3) and 1343(4), which provide for original jurisdiction in this Court of all suits brought pursuant at 42 USC §1981, 1983, §1985 and §300a-7(d). Jurisdiction is also conferred by 28 USC §1331 insofar as the claims for relief derive from the United States Constitution and the laws of the United States.

3. By virtue of 28 USC §1367 this court has supplemental jurisdiction over ancillary claims brought pursuant to State law.

4. Venue is properly conferred on this Court pursuant to 14 USC §15 and 28 USC §1391(b) because the Defendants are subject to personal jurisdiction in this District and because a substantial part of the events giving rise to the claim alleged herein took place in this District.

# PARTIES

5.  At all relevant times herein, Plaintiff, HANNA Q. RHEE, was and is a United States citizen who was domiciled in the State of CALIFORNIA.

6.  Defendant Medical Board of California ("MBOC") is an agency of the State of California. Defendant Medical Board of California is a state administrative agency and a person within the meaning of 42 USC §1983. It is vested with the supervision of physicians within the State of California, including the licensing and termination of medical licenses in California, and the enforcement of the Medical Practice Act.

7.  Defendant Biggs-Gridley Memorial Hospital dba Orchard Hospital ("OH") and its affiliated outpatient clinic Medical Specialty Center ("OHMSC") is a non-profit hospital entity in the state of California which receives funding under a program administered by the Department of Health and Human Services and a person within the meaning of 42 USC §1983.

8.  Defendant Kimberly Kirchmeyer is the Director of MBOC.

9.  Defendant Megan O'Carroll Esq is a Deputy Attorney General for the State of California representing the Defendant MBOC

9a. Defendant Medestar is a temporary employment agency which matches physicians with healthcare facilities

10. Michelle A. Bholat MD is an MBOC member

11. Nathan E. Lavid MD is a Physician Consultant for the Defendant MBOC

12. Reinhardt "Richard" Gordon Hilzinger MD is a Physician Consultant for the Defendant MBOC

13. Roberto Moya is a Senior Investigator for the Defendant MBOC

14. Steven Lee Stark is the Chief Executive Officer of Defendant OH

15. Kirsten Storne-Piazza is a Licensed Marriage & Family Therapist and Clinic Director at Defendant OHMSC

16. Henry B. Starkes Jr MD is a Physician and former Medical Director at Defendant OH's MSC.

16a. James C. Brown Jr DO is a Physician and Chief Medical Officer of OH

17. April Plasencia Buttacavoli is a Medical Assistant at Defendant OHMSC

17a. Alexandra M. Alvarez Esq is a Supervising Deputy Attorney General in the State of California overseeing Defendant Megan O'Carroll Esq

17b. May Usman is the physician contact support at Medestar

18. John T. Harris is Chairman of the Board at Respondent OH

19. Margaret Brown is Vice-Chairwoman of the Board at Defendant OH

20. Edwin A. Becker Jr is Chief Financial Officer of the Board at Defendant OH

21. Clark S. Redfield is Secretary of the Board at Defendant OH

22. Joe Cunha is a Board Member of Defendant OH

23. Curt Engen is a Board Member of Defendant OH

24. Art Cota is a Board Member of Defendant OH

25. Jatinder S. Kullar is a Board Member of Defendant OH

26. The true names and capacities, whether individual, corporate, associate, or otherwise, of Doe Defendants 1 through 20 are known to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis, alleges, that each of the Defendants designated as Doe Defendants are responsible in some manner for the events and occurrences referenced in this complaint, and/or owes money to Plaintiff and/or may be affiliated with one of the other Defendants or may claim some interest in

the subject matter of this Complaint. Plaintiff will ask leave of the Court to amend this Complaint and insert the true names and capacities of Doe Defendants 1 through 20 when the identities of the same have been ascertained, and to join said defendants in this action.

[Hanna Q. Rhee]
~~Defendant in~~ Pro Propria Persona
Plaintiff

## Background

Plaintiff graduated from University of South Florida College of Medicine in 2002.

Plaintiff was first licensed to practice medicine in the State of California by Defendant MBOC in 2011 and was issued Physician and Surgeon Certificate #A116932.

On February 24, 2017, member spoke by phone to Medestar Locum Tenens Physician Recruiter Dustin Attaway to discuss job opportunities. During the recruitment phone call, when Attaway specifically asked "what procedures do you do or not do" Plaintiff stated "I do not do do breast or genital exams; I do not do Pap smears or bimanual exams." Thereafter, Attaway presented two possible job opportunities one of which was at OH which Attaway stated had agreed to the contracted worked even though Plaintiff stated she did not perform the specified procedures." Plaintiff has never been asked why certain procedures were not done. The phone discussion was followed up with an email listing application procedure.

On February 27, 2015, Plaintiff completed and submitted OH paperwork. On page 8 entitled "Request for Privileges Medical", Plaintiff did NOT check boxes "Disease of ovary, fallopian tube parametrium; Epididymitis; Sexually Transmitted Disease; Orchitis; Prostatitis.." since she had already informed Plaintiff she did not perform genital exam nor Pap smears/bimanual exams. And since no Medical Bylaws were received, Plaintiff did not sign confirmation and called Defendant Medestar's Usman who stated "you will get a copy when you arrive at OH. But you have to sign this before I let you work up there. Don't worry; you will receive a copy up there." Upon arrival to OH, Plaintiff was told by Storne-Piazza "they should have given you one at Medesar." Later, CEO Stark stated "you can look online for a standard template of hospital bylaws." Plaintiff then asked Defendant OH's Physician Liaison Christine Villa who stated "sorry, i can't help you... i'm the INpatient liaison, NOT the OUTpatient physician liaison." (In Jan 2017 when emailing OH's Patricia Stahlberg (("Head of Medical Staff Services" unknown to Plaintiff at time of contracted employment in 2015)) Stahlberg stated Medestar has copy of Bylaws; however Defendant's Stefanie Burney stated they do not have any copies of Bylaws, only the facilities. Therefore, Defendants Medestar and OH conspired to deprive Plaintiff of due process since the Bylaws were withheld from her until 2017).

In an email dated February 27, 2015 entitled "Confirmation Letter" from Medestar, statement read "This letter is to confirm your acceptance to provide locum tenens coverage March 2nd - March 31st (M-F 8A-5P) at Orchard Hospital... *"If during the course of this assignment, any concerns arise regarding your assignment which may*

*include, among other things: The scope of the practice you are being asked to perform… You should call your Account Manager during regular business hours. In the event of an emergency, outside of these hours, please call Medestar's after-hours emergency number…"* Upon arrival to OHMSC on March 2, 2015 Plaintiff was given a tour of the facilities, introduced to staff and met with Clinic Director Kirsten Storne-Piazza. After pleasantries, she specifically asked me the limits on the scope of my practice "so I'll know what to tell the schedulers" and I informed her "I don't do Ped's, genital exams, Pap smears/bimanual exams" to which she replied "that's fine we don't have a problem with that.. We're just glad you're here." Again, she never asked why I limit the scope of my practice as it is standard for physicians to have limits as a locum tenens. Subsequently, no patients complaining of genital issues nor Pap smears were scheduled to see me *since Day 1* of my work at OH. Therefore I made no phone calls to Medestar complaining about being asked to perform beyond the scope of our agreement.

On or about March 3, 2015 I thereafter met Dr. Starkes and informed him I did not perform genital exams nor Pap smears/bimanual exams which he agreed to. He never asked why I do not perform them as limits are standard practice with locum tenens providers.

In an email dated March 31, 2015 entitled "Updated April Confirmation Letter - Orchard Hospital" from Medestar attachment read "This letter is to confirm your acceptance to provide locum tenens coverage April 1st - April 30th (M-F 8A-5P) at Orchard Hospital  If during the course of this assignment, any concerns arise regarding your assignment which may include, among other things: "The scope of the practice you are being asked to perform… You should call your Account Manager during regular business hours. In the event of an emergency, outside of these hours, please call Medestar's after-hours emergency number…" Subsequently, no patients complaining of genital issues nor Pap smears were scheduled to see me. Therefore Plaintiff made no phone calls to Medestar complaining about being asked to perform beyond the scope of our agreement.

In an email dated April 16, 2015 entitled "May Confirmation Letter - Orchard Hospital" from Medestar attachment read "This letter is to confirm your acceptance to provide locum tenens coverage May 1st - May 31st (M-F 8A-5P) at Orchard Hospital..If during the course of this assignment, any concerns arise regarding your assignment which may include, among other things: The scope of the practice you are being asked to perform… You should call your Account Manager during regular business hours. In the event of an emergency, outside of these hours, please call Medestar's after-hours

emergency number..." Subsequently, no patients complaining of genital issues nor Pap smears were scheduled to see me. Therefore Plaintiff made no phone calls to Defendant Medestar complaining about being asked to perform beyond the scope of the agreement.

While Plaintiff worked at OHMSC (OH Medical Specialty Center, the outpatient clinic) March 2, 2015 to May 29, 2015 while contracted under Medestar, she was then offered a contract to work directly with OHMSC.

On April 15, 2015 the Plaintiff and Defendant's CEO Stark signed OH Professional Services Agreement. However, no updated Medical Bylaws were provided and no Code of Conduct were provided.

The Professional Services Agreement 1.5(f) states "In compliance with, and shall maintain such compliance with, Hospital's Code of Conduct, which is attached hereto as Exhibit C and incorporated by reference. Page Exhibit C "Code of Conduct" states "Please see attached". **No attachment is found.**

On June 1, 2015 Plaintiff started her first day working under the new contract with OHMSC who agreed to the same work limits which Plaintiff had been performing consistently for the prior three months. When Plaintiff asked again for copies of Medical Bylaws, she was told by CEO Stark to look online for a standard template.

While under the new OHMSC contract, Plaintiff treated an increasing number of patients previously treated by Dr. Starkes and noted the high number of prescriptions for controlled substances, lack of preventative care addressed, failure to obtain standard studies in pain patients, substandard care in the elderly and disabled patients.

From June 1st to September As Plaintiff's patient list for the day increased, Dr. Starkes instructed his medical assistant Lacey Cassidy to remove patients from Plaintiff's list and post them under his daily list of patients. In one instance, Plaintiff noticed a wheelchaired patient in the middle of the hallway with medical assistants Lacey Cassidy and Danielle Grimes. When asked about the commotion, the patient stated "I told them to take me out of Dr. Starkes room because I was here to see you." After wheeling the patient into Plaintiff's exam room, Cassidy stated shrugging her shoulders "Dr. Starkes told me to put her on his list... take her off yours." In the middle of clinic, Dr. Starkes accosted Plaintiff stating "someone told me you said something about me to a patient.." When apologizing for not knowing what he was referring to, Dr. Starkes abruptly walked out of the room. When Plaintiff pulled out her mail out of one of the cubby holes in the

mail area, she noticed a paper addressed to Dr. Starkes. Thinking someone had accidentally misfiled her mail, she placed it in Dr. Starkes' cubby hole. Dr. Starkes publicly accosted Plaintiff stating "Did you touch my mail.. Yes or no.. answer me yes or no.."

On or about August 5, 2015 Plaintiff, Defendant OH employees CEO Stark, Dr. Starkes, Storne-Piazza met where the latter three accused Plaintiff of violations of Defendant OH Code of Conduct, Plaintiff refused to sign Employee Counseling Report as she again demanded a copy of the Code of Conduct which CEO Stark, Dr. Starkes, Storne-Piazza refused to provide for unknown reasons "it is the standard code of conduct any physician anywhere is expected to follow."

On September 3, 2015 Plaintiff was informed in writing put on precautionary suspension. When Plaintiff asked again for "some kind of steps, process procedure" in which to refer to, Plaintiff was informed to speak with Christina Villa "Medical Staff Coordinator". Plaintiff met with Villa who then stated "i'm not the OUTpatient staff coordinator; I'm only the INpatient Staff Coordinator." The following day, Plaintiff resigned from OH and subsequently opened a clinic a few blocks away.

On September 3, 2015 Plaintiff informed Defendant OH employee Storne-Piazza of her resignation due to ongoing harassment and inability to receive fair treatment from Defendant OH. Plaintiff followed up the following day with a written notice of resignation. Without a copy of the medical bylaws, Plaintiff assumed the investigation would continue as her new clinic was only a few blocks away, and she was in frequent contact with OH following up on lab results, dropping off lab samples, faxing referrals to them, etc. "A peer review committee meeting is scheduled for November 10, 2015." To date, Plaintiff has not been informed of the committee's findings nor ever had an opportunity to address the committee.

On September 17, 2015 Plaintiff signed month-to-month lease at 912 Hazel St. in Gridley, CA located 0.5 miles away from Defendant OHMSC.

On November 16, 2015 a California 805 Report was filed by Defendant OH with Defendant MBOC Central Complaint Unit (dates on this form are illegible).

On November 17, 2015 Plaintiff purchased the property at 912 Hazel St. and opened "Hometown Clinic & House Calls".

On November 18, 2015, the case was assigned to Defendant MBOC's Senior Investigator Roberto Moya ("Moya") (this date revealed to her in MBOC's Petition for ISO)

On December 30, 2015, Plaintiff filed a complaint with the California Department of Public Health reporting substandard care at OH (still awaiting copy of "substantiated claims made by complaintant")

On January 11, 2016, Defendant OHMSC submitted a Title IV Clinical Privileges Action into the National Physician Database (NPDB).

On or about February 11, 2016, Plaintiff received notice of NPDB posting through USPS and responded online to Defendant OH's. This action by Plaintiff is the first written evidence of her work as a federal "whistleblower".

On January 3, 2017 Plaintiff med with Defendant MBOC without representation. Defendant California Assistant District Attorney Meghan O'Carroll Esq, Defendant MBOC Senior investigator Moya, MBOC expert physician, Plaintiff were present at the recorded meeting. In the meeting, Plaintiff was advised by MBOC Senior investigator Roberto Moya to report allegations against OH "or you could be held liable you know."

On January 3, 2017 Plaintiff began cooperating with the Drug Enforcement Agency (DEA) as an informant.

On or about March 09, 2017, Plaintiff received a phone call from Monica Perez from HHS OIG regarding the complaint she filed. Plaintiff provided HHS OIG OI information through emails and phone messages to Perez. (This is the second time Plaintiff has worked with HHS OIG OI regarding Medicare fraud waste abuse; previous case was in 2014 against another entity).

On July 18, 2017 an order was signed by Defendant MBOC Board member Michelle Anne Bholat MD for a mental status examination based on a review by Board-UNcertified MBOC expert Hilzinger's review of information. Plaintiff never met with Plaintiff in person. Hilzinger did not submit a Report of his Psychiatric findings; he submitted only a Declaration.

On August 18, 2017 Plaintiff underwent a comprehensive MBOC-ordered forensic psychiatric evaluation conducted by Nathan Lavid MD.

On August 24, 2017 Plaintiff provided feedback to Defendant MBOC regarding evaluation by Lavid by email.

On or about Sept 1, 2017 Plaintiff received copy via USPS of Defendant MBOC Petition for ISO

On October 30, 2017 Defendant O'Carroll Petitioned OAH for an ISO against Plaintiff.

On November 9, 2017 Petition for ISO was denied.

December 10, 2017 Plaintiff submitted Declaration to defendant MBOC providing further information and concerns in regards to their investigation of Plaintiff. On that same day, Plaintiff posted a link to the Declaration on her business Facebook page so as to provide the small rural community with a forum to discuss issues, concerns, and resources related to healthcare. The site has since accumulated over 100 followers, numerous shares/feedbacks and stimulated comments, discussions, ideas, recommendations for improvements in our community's health.

On Dec 13, 2017 Plaintiff received an email and letter from Attorney Dale R. KuyKendall representing Defendant OH threatening defamation lawsuit if Plaintiff's internet posting is not removed immediately. The following day Plaintiff responded to KuyKendall by email directing him to her business' Facebook page for a response to his letter which references 2 complaints Plaintiff received about their negative experiences with Defendant OH. When Plaintiff asked for info on how best to forward those complaints to OH per HIPAA compliance, Plaintiff received no response from them to date.

On December 19, 2017 Plaintiff received a phone call from her Attorney representing Plaintiff in the MBOC investigation. Her Attorney stated he had received a phone call from KuyKendall again threatening defamation lawsuit if posting is not removed "he was very upset". KuyKendall received Plaintiff's Attorney contact info from MBOC as no one else is aware Attorney is representing Plaintiff.

On January 9, 2018 Defendant MBOC publicly posted to their website the extensive Accusation filed against Plaintiff.

On January 11, 2018 Defendant OH posted a link to looking up MBOC accusations against physicians. Page was liked by Defendant OH Board of Directors Vice-Chairwoman Margaret isLey Brown

On January 11, 2018 Plaintiff received a door tag from USPS notifying her Defendant MBOC has filed an Accusation which is posted publicly posted online.

## Statement of Claim
## +
## Causes of Action

### Right to equal protection under the law:

Defendants MBOC, OH, Kimberly Kirchmeyer, Megan O'Carroll Esq deprived Plaintiff of her right to religious freedom. They were also deliberately indifferent and consciously disregarded her cultural beliefs and practices by mocking and unfortunately labeling Plaintiff as "exhibiting odd behavior, paranoid, having a formal thought disorder, and on the fringe of societal norms" when in fact she was merely being a normal Christian woman of faith within her ethnicity.

On October 30, 2017 California Assistant Deputy Attorney maliciously petitioned the CA Office of Administrative Hearings for an Interim Suspension Order from her work as a physician allegedly due to a mental condition. However, Plaintiff underwent a MBOC-ordered comprehensive forensic psychiatric evaluation by Nathan Lavid MD which concluded "Diagnosis by DSM-5: NONE". The ISO was denied. The subsequent now publicly-posted online Accusation reiterated Plaintiff as having a mental disorder despite having worked with HHS OIG OI twice in the past as a federal whistleblower and once as a DEA informant in the interest of public safety for the elderly and disabled.

Defendant MBOC relies on "medical experts" such as Hilzinger and Lavid who have absolutely NO training nor experience with cultural and religious diversity in health care as noted on their very extensive resumes. When assessing Plaintiff's mental fitness, both men were deliberately indifferent and consciously disregarded Plaintiff's Christian faith and cultural beliefs which she discussed with the latter throughout her comprehensive forensic psychiatric evaluation. She was instead labeled as "outside of societal norm" when in fact she was merely behaving as a person does within her ethnicity. Plaintiff was also labeled as "delusional" when in fact she was merely expressing and confessing her religious faith during his interrogation. Defendant's Governor-appointed MBOC member Bholat herself a "co-founder of the UCLA IMG

(International Medical Graduates) Program" was also inexplicably indifferent and disregarded cultural diversity when signing off on the petition for the ISO.

The Jan 9, 2018 online posting of filed Accusation by Defendant MBOC continues to mock Plaintiff for her religious and moral beliefs: "Respondent confirmed that she did not perform genital examinations on patients, but stated that this was due to her lack of qualification to conduct genital examinations." Statement made by malicious O'Carroll is false as the verbatim transcribed meeting states otherwise and again confirms Defendant O'Carroll's practice of falsely stating, manipulating, exaggerating facts which are then posted online under color of state law "in the interest of public safety."

Defendant MBOC's Lavid conflicting assessment contradicting himself illustrates a bias against non-Board certified physicians as being inferior to Board certification. There has never been statistically-significant retrograde analysis which supports the bias as measured by patient morbidity/mortality and healthcare costs. However, an MBOC medical expert who has lost his Board certification may necessitate the question of why a Board-UNcertified medical expert is continuing to be used by the Defendant.

### Violation of Right to Privacy and related due process, et al:

On Jan 09 2018, Defendant MBOC publicly posted on their website online Plaintiff's personal information and administrative allegations full of contorted facts, exaggerated statements and false information without due process in the name of public safety. Defendant O'Carroll once again takes advantage of her position as California Assistant Deputy Attorney acting under color of state law by filing a rather emotional, exaggerated list of charges in the setting of her hysteria toward the DEA informant. Defendant MBOC has absolutely NO statistically-significant retrospective studies to show allegations based on emotionally contorted facts authored by hysteria against licensed workers without due process has increased patient safety in any way. As a result of the posting, Plaintiff has suffered loss to her business as a direct result of the Defendant's online Accusation posting.

In August 2017, Plaintiff was ordered to undergo forensic psychiatric exam based on an exaggerated, false, racially biased order amounting to a "warrantless search" of her mind. The quality of the psychiatric interview fell well below the standard examination process. Lavid began the interview with NO open-ended questions. He then concluded "Diagnosis by DSM-5: None (ICD-10 Code Z71.1) then later contradicted himself by stating "I did not find that Dr. Rhee meets diagnostic criteria for a mental disorder. However, I found that she has thoughts that can be construed as paranoia, which fit

within the persecutory delusional disorder. Based on this paranoia, I concluded that Dr. Rhee is not able to safely practice medicine at this time due to this impairment."

### Violation of Right to Free Speech, Press, Peaceably Assemble, et al:

Defendant O'Carroll and OH conspired to violate Plaintiff's right to free speech, press, and to peaceably assemble online at her business' community Facebook page to discuss patient safety and resources available to the community. Defendant MBOC provided to OH Attorney Dale KuyKendall the name and phone number of a contact close to Plaintiff in which to harass and intimidate Plaintiff into deleting her online post which served to congregate members and to call for a Town Hall-type meeting with Defendant OH.

On or about October 25, 2017 Defendant MBOC censored Plaintiff while publicly speaking at an open quarterly MBOC meeting in San Diego to discuss racial bias amongst MBOC as witnessed by several members of the community as well those listening in via phone lines.

### Violation of Right to work and related due process, et al:

On or about March 2015 to September 2015, Plaintiff worked at OH (the 1st three months was under contract with Defendant Locum Tenens Medestar, the latter 3 months under contract with Defendant OH). On or about Aug 6, 2015 Plaintiff was given a copy of a written warning stating a "Code of Conduct" violation. Plaintiff refused to sign the copy as she was again refused a copy of the Code of Conduct but was instead told by CEO Stark "it is the general code of conduct expected from any physician everywhere." On Oct 25, 2017 Plaintiff again requested a copy of the Code of Conduct by email, but the referenced page again stated "See attachment". No attachment was enclosed.

Defendant OH refuses to share information regarding the peer review committee findings from Nov 10, 2015.

Defendant MBOC flagrantly disregards utilizing experts with experience and training in ethnic diversity, cultural tolerance, community volunteerism nor expert physicians who are contracted with healthcare plans to treat the elderly and disabled low-income Medicare patients so as to provide biased expert opinions against physicians from minority ethnic, cultural, and religious background. The result is to selectively bias evaluation of physicians who, in the past, have been described as "low hanging fruit."

The triaging system with which MBOC selects a complaint to investigate the over 5000 complaints it receives yearly consciously chooses not to quantitate the efficacy of the triaging system so as not to unbias their cloaked selection algorithm. Plaintiff was denied due process by MBOC in not divulging all physician experts involved in the investigation of Plaintiff.

Defendant O'Carroll maliciously Petitioned OAH for an ISO despite MBOC expert stating no mental illness per DSM-V. Sadly, Defendant is again attempting to revoke Plaintiff's license to work despite having NO mental illness: CA B&P Code 822 clearly states that it necessitates the presence of a mental illness which the Plaintiff does not possess. The contorted misstatements of facts in an online post without the opportunity for Plaintiff to respond online serves only to weaponize the licensing process and violate Plaintiff's right to work.

### Relief

① Dollar amount To be decided by jury
② Formation of oversight committee to monitor MBOC
③ Require diversity training + certification as dictated by oversight committee

### Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 01/17, 20 18

④ Removal of 805 mandatory reporting
⑤ Removal of MBOC from public release, but may be petitioned to OAH and requires approval by oversight committee
⑥ No member of the MBOC is to have any hospital affiliations
⑦ Oversight committee to review how/which complaints to be further investigated.

Rhee vs. MBOC et al

Signature of Plaintiff _____

Printed Name of Plaintiff     Hanna Q Rhee

01/17/2018