1

2

3

4

5

6

7

8                           **IN THE UNITED STATES DISTRICT COURT**

9                          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   HANNA Q. RHEE,                               No.  2:18-CV-0105-KJM-DMC

12                  Plaintiff,

13          v.                                     SUPPLEMENTAL FINDINGS AND
                                                   RECOMMENDATIONS
14   BIGGS-GRIDLEY MEMORIAL
     HOSPITAL, et al.,                                 and
15
                    Defendants.                    FINDINGS AND RECOMMENDATIONS
16

17

18

19               Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

20   Court are: (1) the motion to dismiss, ECF No. 12, filed by Defendants Medical Board of

21   California, Kimberly Kirchmeyer, Michelle Bholat, Nathan Lavid, Reinhardt Hilzinger, Roberto

22   Moya, Xavier Becerra, Alexandra Alvarez, and Megan O'Carroll (State Defendants); and (2) the

23   motion to dismiss, ECF No 14, filed by Defendants Biggs-Gridley Memorial Hospital, dba

24   Orchard Hospital, Steven Lee Stark, James Brown, Jr., Kirsten Storne-Piazza, Herry Starkes, Jr.,

25   April Plasencia Buttacavolli, John Harris, Margaret Isley Brown, Edwin Becker, Jr., Clark

26   Redfield, Joe Cunha, Curt Engen, Art Cota, and Jatinder Kullar (Hospital Defendants).  The

27   matters are before the undersigned for issuance of supplemental findings and recommendations

28   addressing the State Defendants' motion and new findings and recommendations addressing the

                                                   1

1  Hospital Defendants' motion, ECF No. 40.

2          In considering a motion to dismiss, the Court must accept all allegations of

3  material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

4  Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

5  v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

6  738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

7  ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

8  395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

9  factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

10  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

11  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

12          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

13  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

14  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

15  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

16  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

17  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

18  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

19  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

20  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

21  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

23  it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

24  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

25  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

26  to relief."  Id. (quoting Twombly, 550 U.S. at 557).

27  / / /

28  / / /

2

1    In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

2  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

4  documents whose contents are alleged in or attached to the complaint and whose authenticity no

5  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

6  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

7  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

8  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

9  1994).

10    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11  amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14                            **I.  PLAINTIFF'S ALLEGATIONS**

15    This action proceeds on Plaintiff's original complaint.  See ECF No. 1.  Plaintiff

16  invokes this Court's federal question jurisdiction based on claims allegedly arising under 42

17  U.S.C. §§ 1981, 1983, 1985, and 300a-7(d).  See ECF No. 1, pg. 2.  Plaintiff names the following

18  as defendants:

19         -   Medical Board of California (MBOC).

20         -   Biggs-Gridley Memorial Hospital dba Orchard Hospital (OH) and its
21            affiliated outpatient clinic Medical Specialty Center (OHMSC).

22         -   Kimberly Kirchmeyer, an MBOC director.

23         -   Megan O'Carroll, Esq., counsel for MBOC.

24         -   Medestar, a temporary employment service.

25         -   Michelle A. Bholat, an MBOC member.

26         -   Nathan E. Lavid, M.D., a physician consultant for MBOC.

27         -   Reinhardt Bordon Hilzinger, M.D., a physician consultant for MBOC.

28         -   Roberto Moya, a senior investigator for MBOC.

3

1       -    Steven Lee Stark, the Chief Executive Officer for OH.

2       -    Kirsten Storne-Piazza, a director at OHMSC.

3       -    Henry B. Starkes, Jr., M.D., a former medical director at OHMSC.

4       -    James C. Brown, Jr., D.O., the chief medical officer at OHMSC.

5       -    April Plasencia Buttacavoli, medical assistant at OHMSC

6       -    Alexandra M. Alvarez, Esq., Supervising Deputy Attorney General.

7       -    May Usman, physician contact support at Medstar.

8       -    John T. Harris, Chairman of the Board of OH.

9       -    Margaret Brown, Vice-Chairman of the Board of OH.

10      -    Edwin A. Becker, Jr., Chief Financial Officer of OH.

11      -    Clark S. Redfield, Board Secretary of OH.

12      -    Joe Cunha, Board Member of OH.

13      -    Curt Engen, Board Member of OH.

14      -    Art Cota, Board Member of OH.

15      -    Jatinder S. Kullar, Board Member of OH.

16      ECF No. 1, pgs. 3-4.

17      Plaintiff, who is a physician, alleges wrongdoing in connection with proceedings

18  initiated by Defendant Medical Board of California to revoke her license to practice medicine in

19  the state.  Plaintiff alleges as follows:

20      Plaintiff graduated from University of South Florida College of Medicine
        in 2002.
21
        Plaintiff was first licensed to practice medicine in the State of California
22      by Defendant MBOC [Medical Board of California] in 2011 and was
        issued Physician and Surgeon Certificate #A116932.
23
        On February 24, 2017, member spoke by phone to Medestar Locum
24      Tenens Physician Recruiter Dustin Attaway to discuss job opportunities.
        During the recruitment phone call, when Attaway specifically asked "what
25      procedures do you do or not do" Plaintiff states "I do not do do [sic] breast
        or genital exams; I do not do Pap smears or bimanual exams."  Thereafter,
26      Attaway presented two possible job opportunities one of which was at OH
        [defendant Biggs-Gridley Memorial Hospital dba Orchard Hospital] which
27      Attaway stated had agreed to the contracted worked [sic] even though
        Plaintiff stated she did not perform the specified procedures.  Plaintiff has
28      never been asked why certain procedures were not done.  The phone

4

1      discussion was followed up with an email listing application procedures.

2      On February 27, 2015, Plaintiff completed and submitted OH paperwork.
       On page 8 entitled "Request for Privileges Medical," Plaintiff did NOT
3      check boxes "Diseased of ovary, fallopian tube parametrium;
       Epididymitis; Sexually Transmitted Disease; Orchitis; Prostatitis" since
4      she had already informed Plaintiff [sic] did not perform genital exam nor
       Pap smears/bimanual exams.  And since no Medical Bylaws were
5      received, Plaintiff did not sign confirmation and called Defendant
       Medestar's Usman who stated "you will get a copy when you arrive at
6      OH.  But you have to sign this before I let you work up there.  Don't
       worry; you will receive a copy up there."  Upon arrival to OH, Plaintiff
7      was told by Storne-Piazza "they should have given you one at Medestar."
       Later, CEO Start stated "you can look online for a standard template of
8      hospital bylaws."  Plaintiff then asked Defendant OH's Physician Liaison
       Christine Villa who stated "sorry, I can't help you. . .  I'm the INpatient
9      liaison, NOT the OUTpatient physician liaison."  (In Jan 2017 when
       emailing OH's Patricia Stahlberg (("Head of Medical Staff Services"
10     unknown to Plaintiff at time of contracted employment in 2015))
       Stahlberg stated Medestar has a copy of Bylaws; however Defendant's
11     Stefanie Burney stated they do not have any copies of Bylaws, only the
       facilities.  Therefore, Defendants Medestar and OH conspired to deprive
12     Plaintiff of due process since the Bylaws were withheld from her until
       2017).
13
       In an email dated February 27, 2015 entitled "Confirmation Letter" from
14     Medestar, statement read "This letter is to confirm your acceptance to
       provide locum tenens coverage March 2nd – March 31st (M-F 8A-5P) at
15     Orchard Hospital. . . . *"If during the course of this assignment, any
       concerns arise regarding your assignment which may include, among
16     other things: The scope of the practice you are being asked to perform. . .
       You should call your Account Manager during regular business hours.  In
17     the event of an emergency, outside of these hours, please call Medestar's
       after-hours emergency number. . . ."*  Upon arrival to OHMSC on March
18     2, 2015, Plaintiff was given a tour of the facilities, introduced to the staff
       and met with Clinic Director Kirsten Storne-Piazza.  After pleasantries,
19     she specifically asked me the limits on the scope of my practice "so I'll
       know what to tell the schedules" and I informed her "I don't do Ped's,
20     genital exams, Pap smears/bimanual exams" to which she replied "that's
       fine we don't have a problem with that. . .  We're just glad you're here."
21     Again, she never asked why I limit the scope of my practice as it is
       standard for physicians to have limits as to a locum tenens.  Subsequently,
22     no patients complaining of genital issues nor Pap smears were scheduled
       to see me *since Day 1* of my work at OH.  Therefore I made no phone
23     calls to Medestar complaining about being asked to perform beyond the
       scope of our agreement.
24
       On or about March 3, 2015, I thereafter met Dr. Starkes and informed him
25     I did not perform genital exams nor Pap smears/bimanual exams which he
       agreed to.  He never asked why I do not perform them as limits are
26     standard with locum tenens providers.

27     ECF No. 1, pgs. 6-7 (italics in original).

28     / / /

5

1    Plaintiff next summarizes emails from Medestar dated March 31, 2015, and April

2    16, 2015, confirming that Plaintiff will provide locum tenens coverage at Orchard Hospital in

3    April and May that year.  See id. at 7-8.

4    Plaintiff then alleges:

5    While Plaintiff worked at OHMSC (OH Medical Specialty Center, the
     outpatient clinic) March 2, 2015, to May 29, 2015, while contracted under

6    Medestar, she was then offered a contract to work directly with OHMSC.

7    On April 15, 2015, the Plaintiff and Defendant's CEO Stark signed OH
     Professional Services Agreement.  However, no updated Medical Bylaws

8    were provided and no Code of Conduct were provided.

9    The Professional Services Agreement 1.5(f) stated "In compliance with,
     and shall maintain such compliance with, Hospital's Code of Conduct,

10   which is attached hereto as Exhibit C and incorporated by reference.  Page
     Exhibit C "Code of Conduct" states "Please see attached."  **No**

11   **attachment is found.**

12   On June 1, 2015, Plaintiff started her first day working under the new
     contract with OHMSC who agreed to the same work limits which Plaintiff

13   had been performing consistently for the prior three months.  When
     Plaintiff asked again for copies of Medical Bylaws, she was told by CEO

14   Stark to look online for a standard template.

15   While under the new OHMSC contact, Plaintiff treated an increasing
     number of patients previously treated by Dr. Starkes and noted the high

16   number of prescriptions for controlled substances, lack of preventative
     care addressed, failure to obtain standard studies in pain patients,

17   substandard care in the elderly and disabled patients.

18   From June 1st to September as Plaintiff's patient list for the day increased,
     Dr. Starkes instructed his medical assistant Lacey Cassidy to remove

19   patients from Plaintiff's list and post them under his daily list of patients.
     In one instance, Plaintiff noticed a wheelchaired patient in the middle of

20   the hallway with medical assistants Lacey Cassidy and Danielle Grimes.
     When asked about the commotion, the patient stated "I told them to take

21   me out of Dr. Starkes room because I was here to see you."  After
     wheeling the patient into Plaintiff's exam room, Cassidy stated shrugging

22   her shoulders "Dr. Starkes told me to put her on his list. . .  take her off
     yours."  In the middle of clinic, Dr. Starkes accosted Plaintiff stating

23   "someone told me you said something about me to a patient."  When
     apologizing for not knowing what he was referring to, Dr. Starkes abruptly

24   walked out of the room.  When Plaintiff pulled out her mail out of one of
     the cubby holes in the mail area, she noticed a paper addressed to Dr.

25   Starkes.  Thinking someone had accidentally misfiled her mail, she placed
     it in Dr. Starkes' cubby hole.  Dr. Starkes publicly accosted Plaintiff

26   stating "Did you touch my mail. . . Yes or no. . . answer me yes or no."

27   ECF No. 1, pgs. 8-9 (bold in original).

28   / / /

                                        6

1     According to Plaintiff, in August 2015 she was accused by CEO Stark, Dr.

2 Starkes, and Storne-Piazza "of violations of Defendant OH Code of Conduct."  Id. at 9.  Plaintiff

3 states she refused to sign a counseling report and again demanded a copy of the Code of Conduct.

4 See id.  Plaintiff claims Stark, Starkes, and Storne-Piazza refused to provide her a copy, stating "it

5 is the standard scope of conduct any physician anywhere is expected to follow."  Id.  On

6 September 3, 2015, Plaintiff was informed in writing that she had been placed on "precautionary

7 suspension."  Id.  That same day, Plaintiff informed Storne-Piazza of her decision to resign "due

8 to ongoing harassment and inability to receive fair treatment from Defendant OH."  Id.  The

9 following day, Plaintiff provided a formal written resignation and "subsequently opened a clinic a

10 few blocks away."  Id.

11     Plaintiff claims she requested a review process and was informed that a "peer

12 review committee" meeting had been scheduled for November 10, 2015.  ECF No. 1, pg. 9.

13 According to Plaintiff, she has never been informed of the committee's findings and never had an

14 opportunity to address the committee.  See id.

15     Plaintiff states that, on November 16, 2015, "a California 805 Report" was filed by

16 Orchard Hospital with the Medical Board of California, Central Complaint Unit.  See id.  The

17 complaint was assigned to Senior Investigator Roberto Moya on November 18, 2015.  See id. at

18 10.  On December 30, 2015, Plaintiff initiated a complaint with the California Department of

19 Public Health to report "substandard care at OH."  Id.

20     Plaintiff next states that Orchard Hospital "submitted a Title IV Clinical Privileges

21 Action" into the National Physician Database (NPDB) on January 11, 2016.  Id.  Plaintiff

22 received notice of the NPDB posting in the mail in February 2016.  See id.  According to

23 Plaintiff, she "responded online" and that "[t]his action by Plaintiff is the first written evidence of

24 her work as a federal 'whistleblower.'"  Id.

25 / / /

26 / / /

27 / / /

28 / / /

Plaintiff alleges that she met with defendant Medical Board of California without representation on January 3, 2017.  See id.  Plaintiff states:

> . . .Defendant California Assistant District Attorney Meghan O'Carroll, Esq., Defendant MBOC Senior investigator Moya, MBOC expert physician, Plaintiff were present at the recorded meeting.  In the meeting, Plaintiff was advised by MBOC Senior investigator Roberto Moya to report allegations against OH "or you could be held liable you know."

ECF No. 1, pg. 10.

Next, Plaintiff states that she "began cooperating with the Drug Enforcement Agency (DEA) as an informant" on January 3, 2016.  See id.

According to Plaintiff:

> On July 18, 2017, an order was signed by Defendant MBOC Board member Michelle Anne Bholat MD for a mental status examination based on a review by Board-Uncertified MBOC expert Hilzinger's review of information.  Plaintiff never met with [Hilzinger] in person.  Hilzinger did not submit a Report of his Psychiatric findings; he submitted only a Declaration.

> Id.

Plaintiff states she underwent the examination on August 18, 2017, conducted by Nathan Lavid, M.D.  See ECF No. 1, pg. 10.

Plaintiff states that Defendant Medical Board of California "publicly posted to their website the extensive Accusation filed against Plaintiff" on January 11, 2018.  Id. at 11.

According to Plaintiff, Defendants violated her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  See id. at 2.  More specifically, Plaintiff claims the foregoing factual allegations support the following legal claims: (1) "Right to equal protection under the law"; (2) Violation of Right to Privacy and related due process, et al."; (3) "Violation of Right to Free Speech, Press, Peaceably Assemble, et al."; and (4) "Violation of Right to work and related due process, et al."  Id. at 12-15.  Plaintiff seeks monetary damages and injunctive relief.  See id. at 15.

/ / /

/ / /

/ / /

## II.  PROCEDURAL HISTORY

Plaintiff paid the filing fees and summons was issued by the Clerk of the Court for each of the entities and individuals named in the complaint.  See ECF No. 2.  Waivers of service were returned executed for Defendants Moya, Medical Board of California, Kirchmeyer, O'Carroll, Bholat, Alvarez, and Hilzinger.  See ECF No. 11.[1]  Plaintiff thereafter filed proofs of service of process for Defendants Buttacavoli, Medestar, and Biggs-Gridley Memorial Hospital. See ECF Nos. 25-28.  To date, Defendant Medestar has not responded to the complaint and Defendant May Usman, a Medestar employee, has not been served.[2]

In response to Plaintiff's complaint, the State Defendants filed a motion to dismiss. See ECF No. 12.[3]  In their motion, the State Defendants primarily argue the Court should decline to exercise jurisdiction under Younger v. Harris, 401 U.S. 37 (1971).  See ECF No. 12-1.  The State Defendants also argue: (1)  Defendant Medical Board of California (MBOC) as well as the individual State Defendants acting in their official capacities are immune from suit under the Eleventh Amendment; (2) Defendants Bholat, Kirchmeyer, O'Carroll, and Alvarez are entitled to absolute immunity as judges/prosecutors; (3) Defendants Lavid, Hilzinger, and Moya are entitled to qualified immunity; (4) Plaintiff cannot state a claim under 42 U.S.C. § 1983 against any of the State Defendants acting in his or her official capacity; and (5) Plaintiff fails to allege facts showing any violation of federal law as to any State Defendant.  See id.

The Hospital Defendants filed a separate motion to dismiss.  See ECF No. 14.  In their motion, the Hospital Defendants argue: (1) Plaintiff's complaint must be dismissed for failure effectuate timely service of process on the Hospital Defendants; (2) Plaintiff's complaint fails to state any factual allegations against the Hospital Defendants; and (3) all claims prior to January 17, 2016 are time-barred.  See ECF No. 14-1.

/ / /

---

[1]  Though not named as a defendant in the complaint, waiver of service was also returned executed for Xavier Becerra, the California Attorney General.  No summons has been issued as to Attorney General Becerra.

[2]  Plaintiff has not sought entry of default as to non-answering Defendant Medestar.

[3]  The state Defendants' motion is also filed on behalf of California Attorney General Xavier Becerra, who is not named in Plaintiff's complaint.

The Court issued findings and recommendations addressing both motions.  See ECF No. 35.  Specifically, the findings and recommendations addressed the immunity and Younger arguments and concluded the Court should abstain under Younger and dismiss the entire action without further consideration of Defendants' remaining arguments.  See ECF No. 35.  The Hospital Defendants filed a request for clarification of and objections to the findings and recommendations regarding the issue of service of process.  See ECF No. 36.  The District Judge thereafter issued an order adopting the findings and recommendations in part and referring the matter back to the assigned Magistrate Judge for further consideration of Defendants' motions to dismiss.  See ECF No. 40.

As to the State Defendants' motion, the District Judge held:

1.    Plaintiff's claims against Defendant Medical Board of California are barred in their entirety by the Eleventh Amendment.

2.    Plaintiff's claims for damages against the State Defendants are barred by the Eleventh Amendment to the extent the State Defendants are sued in their official capacities.

3.    Plaintiff's claims against Defendants Medical Board of California, Kirchmeyer, O'Carroll, and Bholat are dismissed with prejudice on the basis of absolute quasi-judicial and/or quasi-prosecutorial immunity.

4.    Plaintiff's claims for damages against Defendants Alvarez and Becerra are dismissed with prejudice.

5.    Plaintiff claims for injunctive relief against Defendants Alvarez and Becerra are dismissed with leave to amend.

See id.

The District Judge referred the State Defendants' motion back to the assigned Magistrate Judge for further analysis of the Younger issue.  See id.

Relative to the Hospital Defendants' motion, the District Judge directed consideration of "how Younger abstention affects plaintiff's claims against the hospital defendants."  Id. at 4.  The District Judge further directed: "The hospital defendants' motion to dismiss (ECF No. 14) is referred back to the magistrate judge for preparation of new findings and recommendations taking into account the contents of this order and defendants' request for clarification."  Id. at 5.  The District Judge also directed the assigned Magistrate Judge to address

1    the Hospital Defendants' request for clarification regarding service of process filed in response to

2    the initial findings and recommendations.  See id. at 2.

### III.  DISCUSSION

**A.**    **The State Defendants' Motion to Dismiss**

6        The District Judge has directed preparation of supplemental findings and

7    recommendations addressing "the exception to the *Younger* doctrine for proceedings undertaken

8    in bad faith or for harassment, which appears to be at the heart of plaintiff's claim in this case."

9    Id. at 4, 5 (citing Younger, 401 U.S. at 53-54).[4]  As discussed below, the Court concludes that

10    Younger does not apply.  It is thus appropriate to now also consider the remainder of the State

11    Defendants' arguments not previously addressed.  These arguments are as follows: (1) Plaintiff's

12    complaint fails to state a claim under 42 U.S.C. § 1983 against any of the State Defendants acting

13    in their official capacities; and (2) Defendants Lavid, Hilzinger, and Moya are entitled to

14    qualified immunity.

                      1.      Applicability of *Younger*

16        "Younger abstention applies to state civil proceedings when the proceeding: (1) is

17    ongoing, (2) constitutes a quasi-criminal enforcement actions, (3) implicates an important state

18    interest, and (4) allows litigants to raise a federal challenge." Citizens for Free Speech, LLC v.

19    Cty. Of Alameda, 953 F.3d 655, 657 (9th Cir. 2020) (citing ReadyLink Healthcare, Inc. v. State

20    Comp. Ins. Fund, 754 F.3d 754, 759 (9th Cir. 2014)).  "Each of these requirements must be

21    'strictly met.' Rynearson v. Ferguson, 903 F.3d 920, 925 (9th Cir. 2018) (citing

22    AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1148 (9th Cir. 2007)).  Where there is an

23    entry of a final judgment in state court, then the state court proceedings are clearly no longer

24    ongoing for purposes of Younger.  See Page v. King, 932 F.3d 898, 902 (9th Cir. 2019).

25    / / /

26    / / /

---

       [4]      In her order, the District Judge directed: "The portion of the [State Defendants'] motion arguing *Younger* abstention should apply is referred back to the magistrate judge for preparation of supplemental findings and recommendations."  ECF No. 40, pg. 5.

1    Here, the first element is not met.  The Court may take judicial notice pursuant to

2  Federal Rule of Evidence 201 of matters of public record.  See U.S. v. 14.02 Acres of Land, 530

3  F.3d 883, 894 (9th Cir. 2008).  Thus, this Court may take judicial notice of state court records.

4  See Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964).  Following the

5  District Judge's order, the State Defendants filed a request for judicial notice of proceedings in

6  the Medical Board of California and the Los Angeles County Superior Court.  See ECF No. 43.

7  These documents reflect the Medical Board of California found that cause existed for restriction

8  of Plaintiff's medical license due to mental condition of persecutory type delusional disorder and

9  that cause existed to discipline Plaintiff for gross negligence, repeated negligent acts, falsifying

10  medical records, and failing to maintain adequate and accurate medical records.  See id.  The

11  documents further reflect that Plaintiff, through counsel, filed a petition for writ of administrative

12  mandamus in the Los Angeles County Superior Court challenging the MBOC's final decision.

13  See id.  Finally, publicly available state court records show that the Los Angeles County Superior

14  Court has denied Plaintiff's mandamus petition and entered judgment leaving the MBOC's final

15  decision intact.  See Hanna Queen Rhee, M.D. v. Medical Board of California, Los Angeles

16  County Superior Court Case No. 19STCP03849.

17    Because there are no longer ongoing state court or agency proceedings relevant to

18  Plaintiff's claims, Younger does not apply.[5]

19                2.    Failure to State a Claim Under Section 1983

20    The State Defendants contend that Plaintiff cannot state a claim under 42 U.S.C.

21  § 1983 for two reasons.  First, the State Defendants argue that they are not "persons" under §

22  1983 to the extent they are alleged to have acted in their official capacities.  Second, the State

23  Defendants assert that Plaintiff's factual allegations do not show the violation of any federal law.

24  / / /

25  / / /

26  / / /

27  ―――――――――――――
          [5]    The Court expresses no opinion as to the preclusive effect, if any, of the MOBC's

28  or Los Angeles County Superior Court's final decisions on the merits of Plaintiff's claims in this
     case because the issue is not before the Court on proper motion.

                                         12

1          a.      Official Capacity Claims Against the State Defendants

2          The State Defendants contend:

3                A claim pursuant to 42 U.S.C. §1983 is the mechanism for
         vindicating a violation of federal or constitutional rights by "persons"
4        acting under the color of state law. *Thorton v. City of St. Helena*, 425 F.3d
         1158, 1166-1167 (9th Cir. 2005). "Section 1983 does not create any
5        substantive rights; rather it is the vehicle whereby plaintiffs can challenge
         actions by governmental officials." *Henderson v. City of Simi Valley*, 305
6        F.3d 1052, 1056 (9th Cir. 2002). Importantly, as a matter of law, state
         agencies and state officials acting in their official capacity are not
7        "persons" within the meaning of 42 U.S.C. §1983. *Will v. Michigan Dept.
         of State Police, supra*, 491 U.S. at 69-71; *Hafer v. Melo*, 502 U.S. 21, 25,
8        112 S. Ct. 358 (1991).

9          ECF No. 12-1, pg. 16.

10         Under § 1983, a plaintiff must allege a violation of a right protected by the

11   Constitution or created under federal law which is proximately caused by a "person" acting under

12   color of state law.  See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).  State officials

13   sued in their official capacity for damages are not persons for purposes of § 1983.  See Arizonans

14   for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997).  State officials sued in their official

15   capacities for injunctive relief, however, are persons.  See Will v. Mich. Dep't of State Police,

16   491 U.S. 58, 71 n.10 (1989).  To maintain an official-capacity suit against state officials, the

17   plaintiff must allege that a policy or custom of the government entity of which the official is an

18   agent was the moving force behind the violation claimed.  See Hafer v. Melo, 502 U.S. 21, 25

19   (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985).  State officials sued in their personal

20   capacity, either for damages or injunctive relief, are also persons under § 1983.  See Hafer, 502

21   U.S. at 31; see also Porter v. Jones, 319 U.S. 483, 491 (9th Cir. 2003).

22         Where, as here, the complaint does not clearly indicate the capacity in which a

23   defendant is being sued, the Court must make the determination.  In doing so, the Court observes

24   at the outset that the capacity in which the official acted when engaging in the alleged conduct

25   does not determine the capacity in which the official is sued.  See Hafer, 201 U.S. at 26.  To

26   determine capacity, the Court examines the nature of proceedings.  See Graham, 473 U.S. at 167.

27   When, also as in this case, a plaintiff is seeking damages against a state official but does not

28   specifically allege the capacity in which the state official is sued, there is a strong presumption in

                                          13

1    favor of a personal-capacity suit because an official-capacity suit for damages would, as

2    discussed above, be barred.  See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999).

3                 In light of these principles, the Court will presume that Plaintiff sues the State

4    Defendants in their personal capacities and finds that they are persons for purposes of § 1983.

5                          b.      Sufficiency of Plaintiff's Factual Allegations

6                 The State Defendants argue that Plaintiff's complaint fails to allege facts sufficient

7    to show a violation of any federal law.  According to the State Defendants:

8                         . . .In this case, there are no factual allegations as to any federal or
                    constitutional violations by the eight individual State Defendants. Instead,
9                   Plaintiff appears to be critical of the MBOC itself. (See, e.g., ECF No. 1 at
                    pp. 13-14 (relying on medical experts with no training or experience in
10                  cultural or religious diversity, bias in favor of Board-certified physicians,
                    failure to divulge all experts involved in investigation of Plaintiff).)
11                  Accordingly, Plaintiff failed to state a claim under 42 U.S.C. § 1983
                    against any State Defendant.
12
                         ECF No. 12-1, pgs. 16-17.
13

14   In their motion, the State Defendants offer the Court no analysis of any of Plaintiff's specific

15   factual allegations in this context of this somewhat conclusory argument.  See id.

16                Here, the State Defendants are: (1) Medical Board of California, (2) Kimberly

17   Kirchmeyer, (3) Michelle Bholat, (4) Nathan Lavid, (5) Reinhardt Hilzinger, (6) Roberto Moya,

18   (7) Xavier Becerra, (8) Alexandra Alvarez, and (9) Megan O'Carroll.  All claims against

19   Defendants Medical Board of California, Kirchmeyer, Bholat, and O'Carroll have been dismissed

20   with prejudice.  Plaintiff's claims for damages against Defendants Alvarez and Becerra have been

21   dismissed with prejudice.  Plaintiff's claims for injunctive relief against Defendants Alvarez and

22   Becerra have been dismissed without prejudice and with leave to amend.  The Court will,

23   therefore, direct its analysis to Plaintiff's allegations against those individual State Defendants

24   against whom Plaintiff has surviving claims not already subject to amendment – all claims against

25   Defendants Lavid, Hilzinger, and Moya.

26   / / /

27   / / /

28   / / /

14

1    Plaintiff alleges Defendants Lavid and Hilzinger are physician consultants for the

2  MBOC.  <u>See</u> ECF No. 1, pg. 3.  Plaintiff alleges Defendant Moya is a Senior Investigator for

3  MBOC.  <u>See id.</u>  Plaintiff's factual allegations relating to these three defendants are as follows:

4    On November 18, 2015, the case was assigned to Defendant MBOC's
     Senior Investigator Roberto Moya ("Moya") (this date revealed to her in
5    MBOC's Petition for ISO).

6    * * *

7    On January 3, 2017, Plaintiff med [sic] with Defendant MBOC without
     representation.  Defendant California Assistant District Attorney Meghan
8    O'Carroll, Esq., Defendant MBOC Senior Investigator Moya, MBOC
     expert physician, Plaintiff were present at the recorded meeting.  In the
9    meeting, Plaintiff was advised by MBOC Senior Investigator Roberto
     Moya to report allegations against OH [Orchard Hospital] "or you could
10   be held liable you know."

11   * * *

12   On July 18, 2017, an order was signed by Defendant MBOC Board
     member Michelle Anne Bholat MD for a mental status examination based
13   on a review by Board-Uncertified MBOC expert Hilzinger's review of
     information.  Plaintiff never met with Plaintiff [sic] in person.  Hilzinger
14   did not submit a Report of his Psychiatric findings; he submitted only a
     Declaration.
15
     On August 18, 2017, Plaintiff underwent a comprehensive MBOC-ordered
16   forensic psychiatric evaluation conducted by Nathan Lavid MD.

17   On August 24, 2017, Plaintiff provided feedback to Defendant MBOC
     regarding evaluation by Lavid by email.
18
     <u>Id.</u> at 10-11.
19

20   Plaintiff also mentions these defendants in her "Statement of Claim + Causes of

21  Action."  Under the heading "Right to equal protection under the law," Plaintiff adds:

22   . . .Plaintiff underwent a MBOC-ordered comprehensive forensic
     evaluation by Nathan Lavid MD which concluded "Diagnosis by DSM-5:
23   NONE.". . .

24   Defendant MBOC relies on 'medical experts' such as Hilzinger and Lavid
     who have absolutely NO training nor experience with cultural and
25   religious diversity in health care as noted on their very extensive
     resumes. . . .
26
     * * *
27

28  / / /

15

> Defendant MBOC's Lavid conflicting assessment contradicting himself illustrates a bias against non-Board certified physicians as being inferior to Board certification.  There has never been statistically-significant retrograde analysis which supports the bias as measured by patient morbidity/mortality and healthcare costs.  However, an MBOC medical expert who has lost his Board certification may necessitate the question of why a Board-Uncertified medical expert is continuing to be used by the Defendant.

> Id. at 12-13.

Plaintiff further mentions Defendant Lavid under the heading "Violation of Right to Privacy and related due process, et al."  Plaintiff claims Defendants MBOC and O'Carroll – both of whom have been dismissed with prejudice – violated Plaintiff's constitutional rights by publicly disclosing Plaintiff's personal information and allegations based on "exaggerated statements and false information without due process in the name of public safety."  Id. at 13.  In the context of this claim against defendants who have been dismissed, Plaintiff discusses her August 2017 evaluation by Defendant Lavid:

> In August 2017, Plaintiff was ordered to undergo forensic psychiatric exam based on an exaggerated, false, racially biased order amounting to a "warrantless search" of her mind.  The quality of the psychiatric interview fell well below the standard examination process.  Lavid began the interview with NO open-ended questions.  He then concluded "Diagnosis by DSM-5: NONE (ICD-10 Code Z71.1) then later contradicted himself by stating "I did not find that Dr. Rhee meets diagnostic criteria for a mental disorder.  However, I found that she has thoughts that can be construed as paranoia, which fit within the persecutory delusional disorder.  Based on this paranoia, I concluded that Dr. Rhee is not able to safely practice medicine at this time due to this impairment."

> Id. at 13-14.

In light of these allegations, the Court finds that the State Defendants' objection to Plaintiff's complaint is well-taken with respect to Defendants Lavid, Hilzinger, and Moya.

As to Defendant Moya, Plaintiff alleges nothing more than he was an investigator assigned to Plaintiff's case and that he was present at a meeting on January 3, 2017, during which he advised Plaintiff she could face liability if she didn't report her allegations against Orchard Hospital.  Plaintiff's allegations against Defendant Hilzinger are similarly sparse.  The Court is hard-pressed to see how these allegations remotely suggest either Defendant Moya or Defendant Hilzinger violated any rights guaranteed to Plaintiff under the Constitution or federal law.

16

1    Notably, Defendant Moya is not referenced at all in Plaintiff's "Statement of Claim + Causes of

2    Action" and Defendant Hilzinger is mentioned under this heading only insofar as Plaintiff accuses

3    him of having no training.

4           The Court also finds that Plaintiff fails to state a claim against Defendant Lavid.

5    Plaintiff appears to accuse Defendant Lavid of violating her rights to equal protection, privacy,

6    and due process.  The facts Plaintiff alleges, however, establish only that Defendant Lavid

7    performed an evaluation of Plaintiff in August 2017, that he rendered an opinion thereafter, and

8    that Plaintiff believes Defendant Lavid's evaluation was flawed and his report contradictory.

9    When taken in context, Plaintiff's references to Defendant Lavid relate to her claims against other

10   defendants who relied on Defendant Lavid's assessment, specifically the MBOC and O'Carroll,

11   who have both been dismissed with prejudice.

12          Defendants Moya, Lavid, and Hilzinger should also be dismissed with prejudice.

13          3.      Qualified Immunity

14          The State Defendants argue that Defendants Lavid and Hilzinger – who are the

15   MBOC's physician consultants – and Defendant Moya – who is an investigator with the

16   California Health Quality Investigation Unit – are entitled to qualified immunity.  The State

17   Defendants contend:

18          In this case, Plaintiff alleges no facts showing that Defendants
       Physician Consultants Dr. Lavid, Dr. Hilzinger, and HQIU Investigator
19     Roberto Moya violated any of her federal or constitutional rights. Plaintiff
       is merely critical of the physician consultants' qualifications and
20     thoroughness of the forensic psychiatric examination, (ECF No. 1 at
       pp.10-13), and a statement made by Investigator Moya, (ECF No. 1 at
21     p.10). Thus, based solely on the first prong of the *Saucier* analysis, these
       Defendants are entitled to qualified immunity.
22
       ECF No. 12-1, pgs. 15-16.
23

24          The Court agrees.  Government officials enjoy qualified immunity from civil

25   damages unless their conduct violates "clearly established statutory or constitutional rights of

26   which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

27   In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light

28   most favorable to the party asserting the injury, the facts alleged show the defendant's conduct

17

1   violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Because, as

2   discussed above, the Court finds Plaintiff has failed to allege facts sufficient to show Defendants

3   Moya, Lavid, or Hilzinger violated any constitutional or statutory right, let alone one that is

4   clearly established, Defendants Moya, Lavid, and Hilziger are entitled to qualified immunity.  For

5   this additional reason, the Court recommends these defendants be dismissed with prejudice.

6                          **B.        The Hospital Defendants' Motion to Dismiss**

7                  In their motion to dismiss, the Hospital Defendants argue: (1) Plaintiff's complaint

8   must be dismissed for failure to effectuate timely service of process; (2) Plaintiff's complaint fails

9   to state any factual allegations against the Hospital Defendants; and (3) all claims prior to January

10  17, 2016, are time-barred.  See ECF No. 14.  The Hospital Defendants' contentions regarding

11  service of process are further outlined in their request for clarification.  See ECF No. 36.

12  Consistent with the District Judge's order, the Court herein considers these arguments as well as

13  the impact of Younger on Plaintiff's claims against the Hospital Defendants.

14                 Regarding the latter question first, as explained above, the Court concludes that

15  Younger is inapplicable in this case because there are no longer ongoing state court or agency

16  proceedings relative to Plaintiff's claims which would preclude this Court's exercise of

17  jurisdiction.  Any exceptions to the application of Younger which are suggested by Plaintiff's

18  allegations are thus irrelevant.  Younger has no impact on Plaintiff's claims as against any

19  defendant.

20                 The Court next addresses the Hospital Defendants' contentions regarding service

21  of process, the statute of limitations, and the sufficiency of Plaintiff's complaint.

22                          1.        Statute of Limitations

23                 In their motion to dismiss, the Hospital Defendants argue that all claims prior to

24  January 17, 2016, are time-barred by the applicable statute of limitations.  See ECF No. 14-1.

25                 California's two-year statute of limitations for personal injury actions governs

26  Plaintiff's claims.  See Cal. Code Civ. Pro. § 335.1; Colony Cove Props., LLC v. City of Carson,

27  640 F.3d 948, 956 (9th Cir. 2011).  Plaintiff's original complaint was filed on January 17, 2018.

28  See ECF No. 1.  Thus, all claims that accrued more than two years prior, or before January 17,

1   2016, are untimely and must be dismissed.

2          Plaintiff's fourth cause of action for violation of the right to work is time barred.

3   Plaintiff alleges that she worked at the Hospital from March 2015 to September 2015.  Id. at 14.

4   Plaintiff's right to work claim accrued on September 3, 2015, when she stopped working for the

5   Hospital.  As such, the undersigned finds that any potential right to work claims against the

6   Hospital or any of the Hospital Defendants are time-barred.  The Hospital Defendants' motion to

7   dismiss should be granted as to Plaintiff's right to work claim.

8                          2.       Failure to State a Claim

9          In their motion to dismiss, the Hospital Defendants argue that Plaintiff's complaint

10  fails to state any factual allegations against the Hospital Defendants.  See ECF No. 14-1.

11         Plaintiff's remaining causes of action are: (1) violation of the right to equal

12  protection under the law; (2) violation of the right to privacy; and (3) conspiracy to violate

13  Plaintiff's right to free speech, press, and peaceably assemble.  See ECF No. 1, pgs. 12-15.  The

14  undersigned analyzes each cause of action as it relates to the Hospital Defendants.

15                         a.       Equal Protection

16         Plaintiff's first cause of action begins by alleging that the Hospital, as well as

17  several other individuals, deprived Plaintiff of her right to religious freedom.  See ECF No. 1, pg.

18  12.  However, the facts that follow do not demonstrate how the Hospital violated Plaintiff's

19  religious freedom rights.  See id. at 12-13.  In fact, Plaintiff only mentions the Hospital once in a

20  conclusory manner listed amongst other individuals.  See id. at 12.  To state a claim under 42

21  U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the

22  named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S.

23  658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  No other Hospital Defendants are mentioned

24  under Plaintiff's equal protection claim.  See id. at 12-13.  Therefore, the Hospital Defendants'

25  motion to dismiss should be granted as to Plaintiff's equal protection claim against the Hospital

26  Defendants.

27  / / /

28  / / /

1

                 b.      Right to Privacy

2

         Plaintiff's second cause of action does not list the Hospital or any of the individual

3

Hospital Defendants.  See id. at 13.  Therefore, the Hospital Defendants' motion to dismiss

4

should also granted as to Plaintiff's right to privacy claim as against the Hospital Defendants.

5

                 c.      Conspiracy under § 1985 and 1983

6

         Plaintiff, in relevant part, states the following in her third cause of action:

7

> Defendant O'Carroll and OH conspired to violate Plaintiff's right to free
8
> speech, press, and to peaceably assemble online at her business'
> community Facebook page to discuss patient safety and resources available
> to the community.  Defendant MBOC provided to OH Attorney Dale
9
> KuyKendall the name and phone number of a contact close to Plaintiff in
> which to harass and intimidate Plaintiff into deleting her online post which
10
> served to congregate members and to call for a Town Hall-type meeting
> with Defendant OH.

11

12

Id. at 14.

                 i.      Conspiracy under § 1985

13

14

         In order to allege conspiracy under § 1985 a plaintiff must allege that defendants did

15

> conspire or go in disguise on the highway or on the premises of another, for
16
> the purpose of depriving either directly or indirectly, any person or class of
> persons of the equal protection of the laws or of equal privileges and
> immunities under the laws (and) in any case of conspiracy set forth in this
17
> section, if one or more persons engaged therein do, or cause to be done,
> any act in furtherance of the object of such conspiracy, whereby another is
18
> injured in his person or property, or deprived of having and exercising any
> right or privilege of a citizen of the United States, the party so injured or
19
> deprived may have an action for the recovery of damages, occasioned by
> such injury or deprivation, against any one or more of the conspirators.

20

21

Griffin v. Breckenridge, 403 U.S. 88, 92 (1971) (quoting 42 U.S.C. § 1985(3)).

22

Further, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory

23

animus behind the conspirators' action."  Id. at 102.

24

         Here, Plaintiff has failed to connect the alleged conspiracy to a class-based,

25

invidiously discriminatory animus.  Therefore, the Hospital Defendants' motion to dismiss should

26

be granted as to Plaintiff's conspiracy claim under § 1985 against the Hospital Defendants.

27

/ / /

28

/ / /

1                      ii.       Conspiracy under § 1983

2          "A civil conspiracy is a combination of two or more persons who, by some

3  concerted action, intend to accomplish some unlawful objective for the purpose of harming

4  another which results in damage." Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir.

5  1999) (quoting Vieux v. E. Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir. 1990)). "A

6  conspiracy claim under § 1983 has two elements: (1) an express or [] implied agreement to

7  deprive the plaintiffs of constitutional rights and (2) a resulting deprivation of rights." Santana v.

8  Cty. of Yuba, 2016 WL 8673061, at *18 (E.D. Cal. Aug. 19, 2016) (citing Avalos v. Baca, 59

9  F.3d 583, 592 (9th Cir. 2010)). "[T]he plaintiff must show that the conspiring parties 'reached a

10  unity of purpose or a common design and understanding, or a meeting of the minds in an

11  unlawful arrangement.'" Gilbrook, 177 F.3d at 856 (quoting Vieux, 906 F.2d at 1343). "Vague

12  [] claims that a defendant was involved in a conspiracy do not suffice." Santana, 2016 WL

13  8673061, at *18 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

14          Here, Plaintiff fails to state a claim for conspiracy under § 1983. Plaintiff's only

15  factual allegation of conspiracy is that Defendants' counsel "received Plaintiff's Attorney contact

16  info from MBOC as no one else is aware Attorney is representing Plaintiff." ECF No. 1, pg. 11.

17  This is insufficient to imply an agreement to deprive Plaintiff of constitutional rights. Therefore,

18  the Hospital Defendants' motion to dismiss as to Plaintiff's conspiracy claims should also be

19  granted.

20             3.      Service of Process

21          The Hospital Defendants move to dismiss pursuant to Rule 12(b)(5) of the Federal

22  Rules of Civil Procedure on the grounds that Plaintiff failed to serve the summons and complaint

23  within the 90-day period required by Rule 4(m) of the Federal Rules of Civil Procedure. See ECF

24  No. 14-1, pgs. 10, 11. Rule 4(m) provides, in relevant part, "If a defendant is not served within

25  90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff

26  – must dismiss the action without prejudice against that defendant or order that service be made

27  within a specified time." The Hospital Defendants contend that Plaintiff's attempts to effectuate

28  service within 90 days were improper in that Plaintiff did not serve the correct persons under Rule

4(e) and Rule 4(h) of the Federal Rules of Civil Procedure.  See ECF No. 14-1, pgs. 6-7.

The Hospital Defendants' position regarding service of process is further outlines in their request for clarification of and objections to the Court's initial findings and recommendations.  See ECF No. 36.  In their filing, the Hospital Defendants state:

> . . . The Hospital Defendants respectfully seek clarification, or in the alternative object to, the F&R's conclusion that the Hospital Defendants were properly served. (*See* Doc. 35, p. 5).
>
> Due to the lengthy and frequently changing list of defendants, the Hospital Defendants respectfully clarify for the Court that the Hospital Defendants include: *Orchard Hospital, Steven Lee Stark, James C. Brown Jr., D.O., Kirsten Storne-Piazza, Henry B. Starkes Jr., M.D., April Plasencia Buttacavoli, John T. Harris, Margaret Isley Brown, Edwin A. Becker Jr., Clark S. Redfield, Joe Cunha, Curt Engen, Art Cota, and Jatinder S. Kullar.*
>
> After the Hospital Defendants moved to dismiss, Plaintiff filed proofs of service on Defendants Medestar, Winshall, Orchard Hospital, Margaret Brown, Starkes, Storne-Piazza, and Buttacavoli. (Docs. 25-29) The Court referred to these proofs of service in making its finding that the Hospital Defendants had been served. (Doc. 35, p. 5)
>
> The Hospital Defendants respectfully clarify that these proofs of service do not establish that the Hospital Defendants have all been served. The Hospital Defendants do not include Medestar or Winshall, neither of which has appeared in this action. With respect to Orchard Hospital, Margaret Brown, Starkes, and Storne-Piazza, service was improper for the reasons set forth in the Hospital Defendants' motion to dismiss, *i.e.* Plaintiff attempted to effectuate service through unauthorized individuals. Perhaps with the exception of the alleged personal service on Buttacavoli, Plaintiff failed to establish proof of service on the Hospital Defendants.
>
> Service on Orchard Hospital, Margaret Brown, Starkes, and Storne-Piazza was improper, and Plaintiff failed to serve or file proofs of service for Defendants Stark, James Brown, John Harris, Edwin Becker, Clark Redfield, Joe Cunha, Curt Engen, Art Cota, and Jatinder Kullar. Plaintiff's failure to properly serve the Hospital Defendants was one basis for their motion to dismiss, and the Hospital Defendants accordingly request the Court make this clarification for the record.

ECF No. 36, pgs. 2-3.

"Once a defendant challenges service of process, the plaintiff has the burden of establishing the validity of service of process under Rule 4."  Schauf v. Am. Airlines, 2015 WL 5647343, at *4 (E.D. Cal. Sept. 24, 2015).  Federal Rule of Civil Procedure 4(h) governs service over domestic and foreign corporations, and provides that a corporation may be served:

> (1) in a judicial district of the United States:
>
> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or
>
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Fed. R. Civ. P. 4(h).

Rule 4(e) provides for service of process on individuals allowing service by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Rule 4(m) provides an exception for failing to comply with Rule 4 stating: "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." To demonstrate good cause, the plaintiff must show that "'(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" Oyama v. Sheehan, 253 F.3d 507, 512 (9th Cir. 2001) (quoting Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991)). Additionally, "'[g]ood cause' is likely to be found when the failure to complete service in a timely fashion is due to the conduct of a third person, typically the process server." Aussieker v. M&S Green-Power Energy, Inc., 2019 WL 2183783, at *5 (E.D. Cal. May 21, 2019) (citing Wright & Miller, Federal Practice and Procedure Civil (4th ed.) § 1137).

///

1    "The court further has discretion to grant an extension of time even absent a

2    showing of good cause." <u>Moser v. Lifewatch Inc.</u>, 2020 WL 1849664, at *3 (S.D. Cal. Apr. 13,

3    2020) (citing <u>Efaw v. Williams</u>, 473 F.3d 1038, 1040 (9th Cir. 2007) (Rule 4(m), as amended in

4    1993, *requires* a district court to grant an extension of time when the plaintiff shows good cause

5    for the delay).  In exercising its discretion, the Court should consider factors such as "a statute of

6    limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." <u>Efaw</u>

7    <u>v. Williams</u>, 473 F.3d 1038, 1041 (9th Cir. 2007).  "Rule 4 is a flexible rule that should be

8    liberally construed to uphold service so long as a party receives sufficient notice of the

9    complaint." <u>Chan v. Soc'y Expeditions, Inc.</u>, 39 F.3d 1398, 1404 (9th Cir. 1994) (citing <u>United</u>

10   <u>Food & Commercial Workers Union, Locals 197, et al. v. Alpha Beta Co.</u>, 736 F.2d 1371, 1382

11   (9th Cir. 1984)).  Further, there is "a duty to ensure that pro se litigants do not lose their right to a

12   hearing on the merits of their claim due to ignorance of technical procedural requirements."

13   <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Borzeka v. Heckler</u>,

14   739 F.2d 444, 447 n. 2 (9th Cir. 1984) (defective service of complaint by pro se litigant does not

15   warrant dismissal)).

16          In this case, Plaintiff initiated this lawsuit pro se on January 17, 2018.  Thus,

17   Plaintiff was required to effectuate service of process within ninety days of that filing date.  The

18   Hospital Defendants contend that during that 90-day window Plaintiff attempted on several

19   occasions to effectuate service of process on some of the Hospital Defendants.  <u>See</u> ECF No. 14-

20   4, pgs. 2-3; <u>see also</u> ECF No. 35, pgs. 1-3.  Specifically, the Hospital Defendants' counsel states

21   that "[o]n or about January or February 2018, Plaintiff sent procedurally defective requests for

22   waiver of service" to the Hospital Defendants.  <u>Id</u>. at 2.  On March 21, 2018, and again on March

23   28, 2018, the Hospital Defendants "notified Plaintiff that her requests for waiver of service were

24   procedurally defective and therefore were ineffective."  <u>Id</u>.  Plaintiff attempted to serve the

25   hospital through a process server on April 5, 2018.  ECF No. 14-1, pg. 6.  The process server

26   allegedly left the service packet with someone not an officer, managing agent, or general agent of

27   the hospital.  <u>See</u> ECF No. 14-4, pg. 2.  The Hospital Defendants' counsel further states that "[o]n

28   April 10, 2018, Plaintiff, through a process server, improperly attempted to serve [individual

1    Defendants] by delivering copies of the summons and complaint in this matter to my office

2    assistant while I was otherwise occupied at a mediation." Id.

3              Relative to the Hospital Defendants' motion to dismiss and request for

4    clarification, the docket reflects that Plaintiff filed proofs of service on Defendants Orchard

5    Hospital, Margaret Brown, Starkes, Storne-Piazza, and Buttacavoli. See ECF Nos. 25-29. With

6    respect to Orchard Hospital, Margaret Brown, Starkes, and Storne-Piazza, Defendants argue that

7    Plaintiff attempted to effectuate service through unauthorized individuals. See id. Defendant

8    Buttacavoli appears to have been properly personally served, as evidenced by the filed proof of

9    service. See ECF No. 26; see also ECF No. 35, pg. 2 ("Perhaps with the exception of the alleged

10   personal service on Buttacavoli, Plaintiff failed to establish proof of service on the Hospital

11   Defendants.").

12             Regarding service of process, Plaintiff contends:

13             . . .Attorneys Vierra/KuyKenall were aware Plaintiff had
               significant problems related to her email account hannarhee7@gmail.com.
14             Since opening a new account at Black.Patients.Matter@gmail.com, the
               problems have been resolved.  Attorneys Vierra/KuyKendall and the
15             Plaintiff have been communicating very nicely through the updated email
               address regarding Plaintiff's counter-suit against OH in state court as well.
16             In reviewing her office security cameras, it was noted that Attorneys
               Vierra/KuyKendall *always* used process servers which *never* worked on
17             the weekend, the only days open at Plaintiff's clinic as stated on her
               website under "Office Hours".  Plaintiff has diligently attempted to work
18             with Attorneys Vierra/KuyKendall.  However, it becomes challenging
               when said Attorneys set a deadline of "by the end of the day" despite
19             Plaintiff being notified of the deadline at 7:00pm that same day as was
               done when reviewing Attorneys' draft Joint Pretrial Scheduling
20             Conference Status Report on May 29, 2018.  Please note Attorneys'
               complaint of not being properly serviced by the servicer Capitol Couriers
21             is untruthful as they were later used by Defendants to serve Plaintiff
               despite now claiming the servicer are [sic] unreliable.
22
                                        * * *
23
               . . .OH employee Heather Evenson is mistaken in her signed
24             Declaration dated April 25, 2018; OH was properly served in accordance
               with Federal Rules/Statutes by the same Capitol Couriers later hired by
25             Attorneys to serve Plaintiff.  OH employee Brittney Bassett is
               unfortunately mistaken; John Harris is not the only person at OH
26             authorized to receive service as Plaintiff was informed by OH employee
               Patricia Stahlberg that CEO Steve Stark was the only person authorized to
27             receive.  But in the spirit of poor communication at OH, it is also likely *no*
               *one* at the Hospital knows who is authorized to receive service to this date,
28             including Attorneys Vierra/KuyKendall.  An attempt was also made via

                                          25

> email to *all* Defendants represented by Attorneys Vierra/KuyKendall as was done to *the Plaintiff* by Attorneys Vierra/KuyKendall.

> ECF No. 31, pgs. 3-4.

Plaintiff has not demonstrated how service was valid.  Plaintiff provides unsupported conclusory claims of valid service or valid attempts of service.  Plaintiff does not argue that the person who was served was a proper person to be served or that a different person was served.  Nor has Plaintiff demonstrated good cause for non-compliance with the service rules.  Plaintiff does not expressly allege actual notice by Defendants, though Plaintiff's response does indicate that Defendants may have been on actual notice of the claim based on the alleged emails between the parties.  Plaintiff does not show either how Defendants would not be prejudiced, or alternatively how Plaintiff would be severely prejudiced given the current circumstances.  Thus, Plaintiff has not carried her burden demonstrating that service was valid.

The Court declines to exercise its discretion to grant Plaintiff an extension of time to effectuate service.  As discussed above, Plaintiff does not have any remaining claims against the Hospital Defendants.  Plaintiff fails to allege facts in her first three claims to show any of the Hospital Defendants violated her constitutional or statutory rights, and Plaintiff's fourth claim is time-barred as against the Hospital Defendants.  Therefore, the undersigned recommends granting Defendants' motion to dismiss as to all of the Hospital Defendants, rendering issues related to service of process on them moot.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that the State Defendants' motion to dismiss, ECF No. 12, and Hospital Defendants' motion to dismiss, ECF No. 14, both be finally resolved as follows:

1.      The State Defendants' motion to dismiss be denied insofar as they argue the Court should abstain from exercising jurisdiction pursuant to <u>Younger</u>;

/ / /

/ / /

2.      The State Defendants' motion to dismiss be denied insofar as they argue they are not "persons" for purposes of § 1983;

3.      The State Defendants' motion to dismiss be granted insofar as they argue Plaintiff fails to state a claim against Defendants Moya, Lavid, and Hilzinger and these defendants are entitled to qualified immunity;

4.      Defendants Moya, Lavid, and Hilzinger be dismissed with prejudice;

5.      The Hospital Defendants' motion to dismiss be granted;

6.      Defendants Biggs-Gridley Memorial Hospital, dba Orchard Hospital, Stark, James Brown, Jr., Storne-Piazza, Starkes, Buttacavolli, Harris, Margaret Isley Brown, Becker, Redfield, Cunha, Engen, Cota, and Kullar be dismissed with prejudice;

7.      Plaintiff be directed to file a first amended complaint as to her claims for injunctive relief against Defendants Alvarez and Becerra; and

8.      The Clerk of the Court be directed to terminate ECF Nos. 12 and 14 as pending motions.

These supplemental findings and recommendations addressing the State Defendants' motion to dismiss and new findings and recommendations addressing the Hospital Defendants' motion dismiss are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these supplemental findings and recommendations and new findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  January 4, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE