1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
11

HANNA Q. RHEE,                          No.  2:18-CV-00105-DAD-DMC

12

Plaintiff,

13

v.                                      FINDINGS AND RECOMMENDATIONS

14

ALEXANDRA ALVAREZ, et al.,

15

Defendants.

16
17
18

Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the

19

Court is the motion to dismiss, ECF No. 74, filed by Defendants Rob Bonta, Attorney General for

20

State of California, and Alexandra Alvarez, Supervising Deputy Attorney General for State of

21

California.  The Parties appeared for a telephonic hearing before the undersigned on June 7, 2023.

22

Following argument, the matter was submitted.

23
24

**I.  PLAINTIFF'S ALLEGATIONS**

25

Relevant to Defendants' motion to dismiss, Plaintiff originally alleged wrongdoing

26

in connection with proceedings initiated by Defendant MBOC to revoke her license to practice

27

medicine in the state.  See ECF No. 1, pgs. 6-7.  Plaintiff was contracted to work at OHMSC (OH

28

Medical Specialty Center, the outpatient clinic), and, while there, Plaintiff "noted the high

1

number of prescriptions for controlled substances, lack of preventative care addressed, failure to obtain standard studies in pain patients, [and] substandard care in the elderly and disabled patients." Id., pgs. 8-9. Plaintiff initiated a complaint with the California Department of Public Health to report the purported substandard care at OH, which Plaintiff contends was "the first written evidence of her work as a federal 'whistleblower.'" Id. Plaintiff claimed that "a California 805 Report"[1] was filed by Orchard Hospital ("OH") with the MBOC. See id.

Plaintiff alleges former Defendants Lavid and Hilzinger were physician consultants for the MBOC and that the MBOC required Plaintiff to undergo a forensic psychiatric evaluation conducted by Defendant Lavid, as well as a review of medical records by "Board-Uncertified MBOC expert Hilzinger." See ECF No. 1, pg. 10-11. According to Plaintiff, as a result of these evaluations, the MBOC petitioned for an interim suspension order (ISO), which was denied. See id., pg. 11. Plaintiff alleges the MBOC "publicly posted to their website the extensive Accusation filed against Plaintiff," including that Plaintiff had a mental disorder. Id.

Plaintiff now asserts in her replacement first amended complaint ("RFAC") – which is the subject of the pending motion to dismiss – four claims against Defendants Bonta and Alvarez, who are the only remaining Defendants following the District Judge's orders. See ECF No. 73. Plaintiff claims: (1) racial and religious discrimination in violation of the Fourteenth Amendment; (2) abuse of process in violation of the Fifth and Fourteenth Amendments; (3) intentional infliction of emotional distress; and (4) injunctive relief. See id., pgs. 5-11. In her statement of facts, Plaintiff recounts her work history with OH, her purported whistleblowing testimony regarding the high number of prescriptions for controlled substances at OH, Dr. Lavid's psychiatric evaluation, and Dr. Hilziner's record review. See id., pgs. 3-5.

As to Plaintiff's claim for racial and religious discrimination, Plaintiff alleges:

> Defendants discriminated against Plaintiff by ordering her to undergo a psychiatric exam by a "whites-only" psychiatrist who lacks any work in racial and religious diversity, equity, and inclusion as evidenced on his resume. Lavid used racist terms by calling Plaintiff odd, strange, outside

---

[1] Section 805 of the California Business and Professions Code requires a health care facility to report actions adversely affecting a doctor's clinical privileges to the California Board of Medical Quality Assurance.

of societal norm when in fact she was acting as a person would within her race and religion.

Id., pg. 6 (emphasis omitted).

Plaintiff also alleges that "Defendants" retaliated against her for her "federal whistleblower actions by filing the ISO despite their own psychiatrist concluding she had no mental illness." Id., pg. 7.  Plaintiff asserts that "they" "chose to discriminate against the Plaintiff by retaliation against her for filing complaints" as to "OH running a pill mill for illegal narcotics distribution as well as MBOC violating her civil rights." Id.

As to Plaintiff's claim for abuse of process, Plaintiff alleges:

Defendants violated Plaintiffs right to due process by ordering her to be examined by a psychiatrist with no work experience in racial diversity and religious tolerance as evidenced on his resume. As a religious person of color, Plaintiff has the right to due process by being examined by an agent of SOC with work experience in racial and religious diversity, equity, and inclusion. Lavid's racist phrase of "outside of societal norm" he has never used on his white patients and then concluded "no mental illness", only on the Plaintiff who is a person of color. In other words, Lavid was clearly using the opportunity of being an "expert witness" psychiatrist to ridicule Plaintiff for being a minority, but then concluding "no mental illness". On his white patients, he would have merely concluded "no mental illness" without a side comment ridiculing their race.

Id., pg. 8.

As to Plaintiff's third claim for intentional infliction of emotional distress, Plaintiff contends that "Defendants'" primary purpose was to retaliate against her for being a federal whistleblower. Id., pg. 9.  Plaintiff alleges that:

Defendants intentionally inflicted emotional distress by ordering her to be evaluated by a "whites-only" psychiatrist who would predictably used racist terms to describe the Plaintiff who is a person of color. In the history of MBOC, there has *never* been a single case of a psychiatric medical expert who concluded "no mental illness" yet recommends "psychiatric treatment" except in the case of the Plaintiff being ordered to be examined by their racist psychiatrist. Clearly, if Lavid had recent significant work history promoting diversity, equity, and inclusion, he may therefore have understood that his perception of "paranoia" may be a normal state within some traumatized cultural immigrants. [EXHIBIT A, p. 5] However, Plaintiffs medical expert Zaslav presented an equitable view of the Plaintiff.  [EXHIBIT A, p. 6] Not surprisingly, the ALJ agreed with the latter.

Id., pgs. 9-10 (emphasis and alterations in original).

3

1    Plaintiff further alleges that "Defendants" were "unable to manipulate a board-

2   certified internist to carry out the Board's mission of concluding that Plaintiff's medical

3   knowledge was substandard," but "instead found a white SWAT team police member, anti-Black

4   Lives Matter retired family medicine physician who failed to obtain Board re-certification in his

5   field and whose sparse resume reads 'I stay away from Black folks.'"  <u>Id.</u>, pg. 10.  Additionally,

6   Plaintiff asserts that she is highly distressed about "Lavid and Hilzinger's comments," which

7   "may one day be made public." <u>Id.</u>

8    Finally, as to Plaintiff fourth claim for injunctive relief, Plaintiff seeks to enjoin

9   Defendants from using any written or oral testimony resulting from Lavid and Hilzinger against

10   Plaintiff.  <u>See id.</u>, pg. 11.  Specifically, Plaintiff seeks to prevent Lavid and Hilzinger's oral and

11   written testimonies regarding Plaintiff to be used "in any manner to any third parties[,] not limited

12   to Court cases, and to be expunged from any records kept by MBOC" regarding Plaintiff.  <u>Id.</u>

13   Plaintiff requests that "any Court (or Hearing) cases which depend on the testimonies of Lavid

14   and Hilzinger in regards to the Plaintiff should therefore be null and void and removed from any

15   public domain." <u>Id.</u>  In support of her request, Plaintiff asserts that such injunctive relief is in the

16   public interest because:

17    [C]ontinuing to support professionals from whites-only entities as
     "experts" in their respective fields is clearly offensive to the vast minority
18    populations in the US. The public has a right to expect their medical
     experts to have treated a diversified patient population. In addition,
19    Plaintiff is an excellent physician who has never had a complaint lodged
     against her, and therefore the public would lose access to yet another
20    female minority physician who *has* treated a diversified patient
     population. In fact, Plaintiff is the co-founder of Black Patients Matter, a
21    nonprofit patient advocate group which has faithfully attended *all* MBOC
     meetings since 2018 advocating for African-American patients,
22    demanding all MBOC medical experts and consultants have recent
     significant work history promoting diversity, equity, and inclusion, and
23    mediation as an alternative to resolving certain patient complaints.

24    <u>Id.</u> (emphasis in original).

25   / / /

26   / / /

27   / / /

28

4

1

## II.  STANDARDS FOR MOTION TO DISMISS

2             In considering a motion to dismiss, the Court must accept all allegations of

3   material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

4   Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

5   v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457

6   U.S. 800 (1982); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976);

7   Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must

8   also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

9   However, legally conclusory statements, not supported by actual factual allegations, need not be

10  accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings

11  are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404

12  U.S. 519, 520 (1972).

13             Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

14  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

15  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

16  550 U.S. 544, 555 (2007).  However, in order to survive dismissal for failure to state a claim

17  under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements

18  of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above

19  the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim

20  to relief that is plausible on its face."  Id.  at 570.  "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility

23  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

24  that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a

25  complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

26  the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550

27  U.S. at 557).

28  / / /

5

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998). The Court may consider documents: (1) whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see id.; (2) whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## III.  DISCUSSION

Defendants argue Plaintiff's first three claims are in violation of the District Judge's orders and fail to state a claim for relief.  See ECF No. 74. As to Plaintiff's fourth claim for injunctive relief, Defendants argue Plaintiff lacks standing.  See id. For the reasons set forth below, the undersigned recommends Plaintiff's claims for discrimination, abuse of process, and intentional infliction of emotional distress against Defendants Bonta and Alvarez be dismissed with prejudice.  Moreover, Plaintiff cannot make out a claim for injunctive relief because she does not have standing.  Thus, jurisdiction is lacking and the undersigned further recommends Plaintiff's claim for injunctive relief similarly be dismissed with prejudice.

### A.   **District Judge's Orders**

Defendants argue that Plaintiff's first three claims for discrimination, abuse of process, and intentional infliction of emotional distress are in violation of the Court's prior orders. See ECF NO. 74-1, pg. 2.  Defendants maintain that Plaintiff was granted leave to amend her complaint **only** as to her claim for injunctive relief against Defendants, not as to any other claims. ECF No. 74-1, pg. 7.  In her opposition, Plaintiff fails to substantively respond to Defendants' assertions that she is in violation of the District Judge's prior orders, other than to request an opportunity to, once again, amend the complaint. See ECF No. 75, pg. 2.  Plaintiff provides no

6

1  reasons for including these three additional claims not originally plead by Plaintiff. Cf. ECF No. 1

2  with 73.

3            The District Judge previously ordered that:

4            Plaintiff's claims for damages against defendants Alvarez and Attorney
             General Becerra are DISMISSED with prejudice, while her claims for
5            prospective and injunctive relief against Alvarez and Attorney General
             Becerra are DISMISSED without prejudice.
6
7            ECF 40, pg. 5.

8            Plaintiff is directed to file a first amended complaint as to her claims for
             injunctive relief against defendants Alvarez and Bonta. . . .
9            ECF 59, pg. 3.

10           When asked, in light of the District Judge's order, what authority Plaintiff relied

11  on to include these additional claims, Plaintiff replied that she had "the authority of Jesus Christ."

12  The undersigned responded that Jesus Christ was not at issue or relevant to the District Judge's

13  order or authorization to add claims.  Therefore, because the District Judge granted Plaintiff leave

14  only "as to her claims for injunctive relief" as to Defendants Bonta and Alvarez, and Plaintiff

15  failed to provide any relevant authority authorizing pleading of the additional claims, the

16  undersigned recommends dismissing without prejudice Plaintiff's claims for discrimination,

17  abuse of process, and intentional infliction of emotional distress against Defendants Bonta and

18  Alvarez.  Because these claims are in contravention of the District Judge's order, the undersigned

19  finds no need to ascertain whether Plaintiff also fails to state a claim upon which relief can be

20  granted.

21       **B.**     **Standing**

22           Plaintiff seeks an injunction against Defendants enjoining them from using any

23  oral or written testimony of Drs. Lavid or Hilzinger relating to Plaintiff "in any manner to any

24  third parties[,] not limited to Court cases, and to be expunged from any records kept by MBOC"

25  regarding Plaintiff.  ECF No. 73, pg. 11.  Plaintiff requests that "any Court (or Hearing) cases

26  which depend on the testimonies of Lavid and Hilzinger in regards to the Plaintiff should

27  therefore be null and void and removed from any public domain." Id.

28  / / /

Defendants claim this Court lacks jurisdiction to grant injunctive relief because Plaintiff must first establish standing, which Plaintiff has not done here.  See ECF No. 74-1, pgs. 4-5.  Defendants argue Plaintiff has not alleged facts to show that her injury, "whatever that might be," is "fairly traceable" to Defendants' conduct and Plaintiff cannot show "a realistic likelihood" that the allegedly injurious conduct of Defendants will be repeated such that an injunction is necessary to redress her injury.  See ECF No. 74-1, pgs. 5-6. Thus, Defendants argue, this matter must be dismissed. Id., pg. 5.

"The first question, as always, is whether this court has jurisdiction." Tomer v. Gates, 811 F.2d 1240, 1242 (9th Cir. 1987) (per curiam). One limit on a court's jurisdiction is constitutional standing. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To have standing, a plaintiff must show (1) the plaintiff suffered an injury in fact—one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the challenged conduct, and (3) the injury is likely to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). This "triad of injury in fact, causation, and redressability" constitutes the core of the court's jurisdictional requirement.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998).

"The burden of establishing standing[,] as well as an entitlement to equitable relief[,] lies squarely with the plaintiff[]" and such basis must affirmatively appear in the record for each claim asserted and each form of relief sought.  Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1228 n.5 (9th Cir. 2008); Stevens v. Harper, 213 F.R.D. 358, 367 (E.D. Cal. 2002) (citing San Diego Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996)).  While "general factual allegations of injury resulting from the defendant's conduct may suffice," a plaintiff must still allege "a causal connection between the injury and the [defendant's] conduct" at issue to survive a motion to dismiss.  Washington Env't Council v. Bellon, 732 F.3d 1131, 1139 (9th Cir. 2013).  It is insufficient to connect the injury to the independent actions of a third party. Lujan, 504 U.S. at 560.

/ / /

8

To have standing to assert a claim for prospective injunctive relief, a plaintiff must "demonstrate 'that he is realistically threatened by a repetition of [the injury].'" Melendres v. Arpaio, 695 F.3d 990, 997 (9th Cir. 2012) (quoting City of L.A. v. Lyons, 461 U.S. 95, 109 (1983)). "This threat must be 'real and immediate,' rather than merely 'conjectural' or 'hypothetical.'" Marable v. Nitchman, 262 F. App'x 17, 22 (9th Cir. 2007) (quoting Lyons, 461 U.S. at 103). "Past wrongs may bear on whether there is a threat of repeated injury, but they do not, in themselves, demonstrate a present case absent 'continuing, present adverse effects.'" Id. (citation omitted) (quoting Lyons, 461 U.S. at 102).

Defendants maintain that Plaintiff seeks not prospective relief, but retroactive relief—the reinstatement of her medical license by having the testimonies of Doctors Lavid and Hilzinger stricken from MBOC records. See id., pgs. 4-5. It is Plaintiff's contention, according to Defendants, that without Drs. Lavid's or Hilzinger's testimonies, "there is no legal basis for the revocation of [Plaintiff's] medical license and her license should be reinstated." Id. Defendants contend that to "obtain Plaintiff's desired result" would require this Court to order the MBOC to expunge its records, which they argue is not prospective relief. Id. Further, as to Plaintiff's injury, Defendants assert that it is not "fairly traceable" to Defendants' conduct and Plaintiff cannot show any "realistic likelihood" that the alleged injurious conduct by Defendants will be repeated and an injunction is necessary. See id., pg. 6. Finally, it is argued, other than Defendants representing the State of California in the underlying action, Plaintiff fails to allege any details as to their involvement in the MBOC investigation, which forms the basis of Plaintiff's request for injunctive relief. See id., pg. 7.

Plaintiff responds by stating she "continues to lose work and friends due to Lavid/Hilzingers' 'testimonies.'" ECF No. 75, pgs. 3-4. Plaintiff claims that on a recent missionary trip, at least two persons admitted to reading the doctors' testimonies, called her a "liar" twice, marginalized her from social interactions, and did not invite her to the final dinner. Id., pg. 3. Plaintiff claims she has either been fired or told she is unqualified as a result of the doctors' testimonies. See id., pg. 4. Plaintiff argues that she continues to be "unemployed due to the biased testimonies of Lavid/Hilzinger" and that she "truly seeks to stop the hate against her by

9

1  anyone (which is everyone) who uses the internet as the racist testimonies of Hilzinger/Lavid can

2  be found on multiple places online." Id.

3         Plaintiff has not satisfied her burden to show that she has standing such that

4  prospective injunctive relief is appropriate.  During the hearing, Plaintiff argued that Defendants

5  (1) required her to be evaluated by experts who have no experience in diversity and inclusion,

6  (2) take joy in using these experts to humiliate, discriminate, bully, hate, belittle, berate, and

7  traumatize minority workers, which the State of California thrives upon, and (3) such actions are

8  taken for the sole purpose of discriminating against monitories, including her. As a person of

9  color, Plaintiff maintained, she has direct authority to speak on these issues.  Defendants

10  primarily argued Plaintiff failed to identify any actions taken by Defendants that could be

11  repeated in the future. In support, Defendants claimed Plaintiff's medical license has already been

12  revoked so she is not subject to any future actions by Defendants; thus, she has no standing.

13  Furthermore, in response to Plaintiff's assertion regarding the State's actions against other

14  minorities, Plaintiff also has no standing to act on behalf of others.

15         Here, Plaintiff neither has the authority to speak on behalf of others, nor the

16  standing to seek injunctive relief on the basis of Defendants' purported actions.  Plaintiff provides

17  nothing cogent or persuasive to indicate a future imminent risk of harm by Defendants to warrant

18  the Court's immediate intervention.  Plaintiff's argument that Defendants required her to be

19  evaluated by experts is a past occurrence and, since her license has already been revoked, is not

20  one that she is in imminent harm of its future occurrence. Thus, injunctive relief is not

21  appropriate.

22         Moreover, even in the light most favorable to Plaintiff, Plaintiff has failed to allege

23  that her purported injury is fairly traceable to Defendants' conduct.  Aside from identifying

24  Defendant Alvarez as the "Supervising Deputy Attorney General" and Defendant Bonta as the

25  "current Attorney General" for the State of California, Plaintiff nowhere again mentions either

26  Defendant in the RFAC, much less alleges sufficient facts for an inference to be made that her

27  injury is "traceable" to some actions by Defendants. See ECF No. 73, pg. 2.  Thus, Plaintiff does

28  not have standing to seek injunctive relief and, as a consequence, there is no jurisdiction in which

1  to do so.  Because Plaintiff has no standing, the undersigned recommends this matter be

2  dismissed with prejudice.[2]  As a result, it is unnecessary to determine whether Plaintiff has

3  satisfied the requirements for injunctive relief.[3]

4

5  ## IV.  CONCLUSION

6  Based on the foregoing, the undersigned finds further leave to amend is not

7  warranted and recommends that Defendants' motion to dismiss, ECF No. 74, be granted, and that

8  this action be dismissed in its entirety with prejudice.

9  These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

11  after being served with these findings and recommendations any party may file written objections

12  with the Court.  Responses to objections shall be filed within 14 days after service of objections.

13  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

14  Ylst, 951 F.2d 1153 (9th Cir. 1991).

15

16  Dated:  June 15, 2023

17  _____
DENNIS M. COTA

18  UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24  [2] As such, it is unnecessary to ascertain whether Plaintiff's purported injury can be redressed by a favorable decision of this Court.

25  [3] Other than alleging in the RFAC that an injunction is the in public interest, see ECF No.

26  73, pg. 11, Plaintiff fails to allege facts to substantiate each of the factors necessary for injunctive relief: whether Plaintiff is "likely to succeed on the merits," is "likely to suffer irreparable harm in the absence of preliminary relief," "the balance of equities tips in [her] favor," and "an injunction

27  is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

28  Nonetheless, the issue is moot.

11